## DAMAGES FOR CHANGE OF GRADE.

[Cuyahoga County Common Pleas Court.]

THE EAST END BANKING & TRUST COMPANY v. THE CITY OF
CLEVELAND ET AL.*

Decided, October 1, 1903.

*Streets—Change of Grade of—In Abolishing Railway Crossings—Proceedings for Change of Grade Under the New Code—Compensation to the Injured Property Owner—How Recovered, and When—Property Owner's Rights Broader Than the Strict Letter of the Constitution—Injunction Not Available—But Damages May Be Recovered Even Without a Statute Providing a Mode for Their Assessment.*

1. The changes introduced into the statutes by the adoption of the new Municipal Code, with reference to street improvements and damages from change of grade, relieve the property owner from the necessity of filling his claim for damages by reason of the improvement within the time specified in Section 54 of the Code, except in cases of improvements to be paid for in whole or in part by special assessments.

2. There is probably still authority of law for the service of notice on abutting property owners of a proposed street improvement, and for the filing of claims for damages by property owners who choose so to do, and for a municipal corporation, where such claims have been filed, to cause damages to be assessed by a jury either before or after the improvement is made, with the option in the property owner of declining to file a claim, but instead bring a suit directly against the corporation for his damages.

3. The property right which the abutting owner has in the street is subject to the right and duty of the municipality to put and maintain the street in suitable condition, and to this public right all private rights are subordinate.

4. Where conditions make necessary or proper a change of grade, the basis of the right of the abutting property owner to recover damages because of having been misled to his injury is founded, not in the strict letter of the Constitution, which recognizes

*This opinion was affirmed by the Circuit Court on November 4, 1903, Judges Hale, Marvin and Winch sitting. The memorandum opinion was by Judge Marvin, and reads as follows: "The petition will be dismissed. Judgment for the defendant in accordance with the opinion given by Judge Lawrence in the court of common pleas, which opinion we have examined very carefully, and find no reason why an injunction should be granted."

only his right of access, with no distinction as to improved and unimproved lots, or time of improvement, but is found in the spirit of the Constitution, that an injury to an . individual in the public interest should be borne by the public.

5. Hence it is competent for the Legislature to authorize municipal corporations to level and improve streets, without providing in advance for assessment of compensation, or the means of making such an assessment otherwise than in an action at law.

6. And injunction will not lie to prevent the carrying forward of a public work of such importance as the changing of grade crossings of steam railways, where no danger exists of substantial loss to an abutting property owner, and the mode open to him for recovering compensation is alone involved.

LAWRENCE, J. (Orally).

Without attempting a full discussion of all the questions presented on the motion of the plaintiff for a temporary injunction in this case, I will state the conclusions to which I have come.

The plaintiff owns a parcel of real estate situated at the southwest corner of Detroit and Berea streets in this city, on which there is a valuable building. In collection with the work of abolishing the grade crossing of the Lake Shore & Michigan Southern Railway on Detroit street, the City of Cleveland has, by ordinance, re-established the grade of said Detroit street and Berea street, at and near the intersection of the same, whereby the surface of said streets will be cut down and lowered about twelve feet, along and in front of said plaintiff's premises, and said city has also provided for the improvement of said streets in accordance with such changed grade, and has let the contracts for doing the work, and proposes to proceed therewith.

In the improvement ordinances the council of said city provided that said ordinances should be published twice in a newspaper, and that notice of the passage of the same should be served upon the owners of each parcel of property on those parts of said streets to be improved. The ordinances were so published, and on July 2, 1903, notices of their passage were served on the plaintiffs. Subsequently, the plaintiffs presented to the city clerk of said city a claim for damages by reason of said proposed change of grade, but that officer refused to receive and file the same, on the alleged ground that the time limited by law for the filing of such claims had passed.

Thereupon the plaintiff commenced this action, seeking to enjoin the City of Cleveland and the other defendants from proceeding with the work of abolishing said grade crossing and of cutting down or lowering the grades of said streets, without having first appropriated the property necessary for said improvement, including the property of the plaintiffs, or without having first agreed with the owners thereof upon the compensation to be paid, and without paying or securing with a deposit of money the compensation therefor. By the term "property" in this connection, I understand the plaintiff means the right of access to its premises, and it claims the right to have the existing grades of said streets maintained, without impairment of its present means of access to its building and premises, until it has received compensation for the damages which will result from the proposed change of grade.

The proceedings for abolishing the grade crossing in question, as between the city and the railway company, have been had substantially in accordance with the terms of the act entitled "An act to abolish grade crossings in municipal corporations," passed May 2, 1902 (95 O. L., 356), and the proceedings in respect to the ordinances re-establishing the grades of Detroit street and Berea street, and in respect to the grading and improvement of the same in accordance with the present established grades, also appear to be regular and within the powers of a municipal corporation, unless, as contended by the plaintiff, there is now no valid law whereby the grade of a street can be changed, without the previous appropriation of the right to do so, and the payment or securing of the compensation awarded therefor.

Under the former statutes relating to municipal corporations, in force at the time of the passage of the act of May 2, 1902, provision was made applicable to all cases for the improvement of streets, whether to be paid for by special assessment or otherwise, to the effect that before making any such improvement the corporation should first, by resolution, declare its intention so to do, should cause notice to be given to abutting property owners of the adoption of such resolution, and should, either before or after the making of the improvement, as might be determined by it, apply to the court for the impanneling of a jury to assess the damages claimed by abutting property owners; and it further provided that

any property owner who failed to file his claim for damages within the time limited should be barred of the same. I refer to Sections 2304, 2315, and other sections of the Revised Statutes as they formerly were in force.

By the new Municipal Code, passed since the passage of the act of May 2, 1902, some alterations have been made in the statutes in reference to the matter of improvements and damages for a change of grade of a street. These provisions are found in Sections 51 and 58 of the new Municipal Code, which I will not stop to read, as counsel are familiar with them.

In my judgment the effect of these alterations in the statutes is, that a property owner is now required to file his claim for damages by reason of the improvement, within the time specified in Section 54 of the code, only in case of improvement to be paid for in whole or in part by special assessments, and that it is only in such cases that he is barred of his claim for damages by reason of his failure to file the same within the specified time. I think these alterations were made inadvertently by the General Assembly, but thus far the language of the new code, to my mind, admits of no other construction, inasmuch as the barring of the right to damages must be treated in the nature of a forfeiture, and the statute imposing it must, therefore, be strictly construed. Hence I am of the opinion that nothing has been done which in any manner bars the plaintiff from its right to any damages it may sustain on account of the proposed change of grade. I am further of the opinion that the plaintiff had a right to file its claim for damages with the city clerk at the time it attempted to do so, and that the clerk should have received and filed the same. So far as any rights of the plaintiff were dependent on such filing, the claim would be regarded as filed.

When we come to consider the provisions of the new code in respect to the proceedings for the assessment of damages for street improvements, and construing these in connection with Sections 2318 and 2321, Revised Statutes, which have not been repealed, and also in connection with the express power conferred by Section 7 of the new code, to grade streets and to provide by ordinance for the exercise and enforcement of such power, it would not require a very violent construction, in cases of street improvements, such

as the one in question, to find ample authority of law for the service of the notice on abutting property owners of the proposed improvement, for the filing of their claims for damages by property owners who choose to do so, and, where such claims are filed, for the municipal corporation to cause the damages to be assessed by a jury, either before or after the improvement is made. This construction would still leave it optional with the property owner to file his claim in order to have his damages assessed or to bring suit directly against the corporation to recover his damages. The possibility would also exist, that the city might fail or refuse to take steps to adjust a claim for damages filed, which would compel the property owner to bring an action for his damages. The same possibility existed, however, under the former sections of the Revised Statutes on this subject, and must exist under any statute which permits the postponement of the proceedings for the assessment of damages until after the improvement is made, and thus the property owner would be compelled either to bring a suit in mandamus to compel the impanneling of a jury for the assessment of damages, or to sue at law for the recovery of his damages.

However, it is not my purpose to place the decision of this motion upon the construction of the statutes here suggested. Suppose we adopt the view of the plaintiff's counsel, that there is now no statute providing any mode for assessing the damages in a case like this, and how does the case stand? This brings me to what I regard as the main question to be determined.

The position of plaintiff's counsel is, that the right of the abutting property owner, under consideration here, is property within the meaning of Section 19, Article I, of the Constitution of Ohio, which provides that—

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner in money; and in all other cases where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money."

As a street is a road, it is not necessary that the compensation for the appropriation of property for such purpose be made in advance; but inasmuch as the provision of the Constitution permitting the appropriation of lands for roads, without first making compensation, is not self-executing, it is said that, in order that a law be valid without providing for compensation in advance, it must provide the means of making compensation after the appropriation is made.

The question here, however, is the application of this doctrine, which depends on whether or not damage to property by reason of a change of grade in a street is property within the meaning of the constitutional provision referred to. It can not be denied that the right of the abutter in the street is a property right, but the important thing is to deermine the nature and extent of such property right. Is it absolute, or is it qualified and effected by a superior right in the public? Will the court say that no law authorizing the grading of a road or street is valid, unless at the same time provision is made for serving notices on abutting property owners, for requiring them to file their claims for damages, and for the impanneling of a jury to assess such damages?

I believe that it has never been authoritatively held in any decision of our Supreme Court in a case involving the right to recover damages for a change of grade, that the right invaded by a change of grade is property within the terms of the constitutional provision above referred to, although there are some dicta to that effect.

During the period when the doctrine in reference to damages for a change of grade, which is peculiar to Ohio, was being developed, there was no statute in this state providing any method of assessing such damages otherwise than in an action at law by the abutting property owner.

The first general act providing a method of ascertaining damages by reason of a change of grade was passed May 1, 1854 (52 O. L., 131; S. & C., 1540). In 1858 there was a further act passed on this subject, which may be found in 53 Ohio Laws, page 187 (S. & C., 1545).

The Municipal Code of 1869, in Sections 564 to 575, embodied substantially the provisions found in the former sections of the Revised Statutes.

As appears from the case of *Hickox* v. *Cleveland,* 8 Ohio, 543, special acts were passed in 1834 and 1835 providing for the grading of certain streets in Cleveland, which provided for the assessment of damages by a committee of three persons named directly by the General Assembly.

In holding that the right to a trial by jury did not exist in respect to such damages, this case is probably not sound, but the view of the court as to the nature of the right to compensation in such cases may be of some interest, at least as showing how such right was then regarded by the court. I read from the opinion, on page 545:

"The power complained of, in this instance, is one which has been exercised in every civilized country. At Rome, the general care of the highways was given to the Aediles, who appointed agents for the superintendence of the roads without, and of the streets within the city. And one of the duties of these last was to level the streets. Where private property was taken for public uses, the civil law allowed a compensation. The common law lawyers have always contended against this right. In this country we have adopted the former rule, the state of South Carolina being the only one which I recollect whose Constitution does not guarantee the right to be compensated in such cases. Whether this case, however, comes within the provision of our Constitution, I think may well be doubted. Private property is not in reality appropriated to public uses; but by leveling the streets in Cleveland, a consequential injury only is sustained by individuals. It was in the power of the Legislature, however, to award compensation; and they have made effectual provision for that purpose."

The next case on this subject is found in the 10th Ohio Reports, at page 159. I will read a paragraph from the opinion on page 161. It is the case of *George W. Rhodes* v. *The City of Cleveland,* and was an action at law to recover damages by reason of a change of grade. In the opinion it is said:

"The question arising from the record is whether a corporation is liable to repair damages for a consequential injury, arising from the exercise of its ordinary powers. * * * That the rights of one should be so used as not to impair the rights of another, is a principle of morals, which, from very remote ages, has been recognized as a maxim of law. If an individual, exercising his lawful powers, commits an injury, the action on the case is the familiar

remedy; if a corporation, acting within the scope of its authority, should work wrong to another, the same principle of ethics demands of them to repair it, and no reason occurs to the court why the same remedy should not be applied to compel justice from them."

Further along it is said:

"Upon the whole then, we believe that justice and good morals require that a corporation should repair a consequential injury, which ensues from the exercise of its functions, and that if we go further than adjudicated cases have yet gone, we do not transcend the line to which we are conducted by acknowledged principles. We hold, therefore, that corporations are liable like individuals, for injuries done, although the act was not beyond their lawful powers."

In the case of *McCombs* v. *The Town Council of Akron*, 15th Ohio Reports, page 474, the court held that the city of Akron was acting within its corporate powers, although at that time there was no law providing any means for assessing compensation for the damages by reason of a change of grade. The syllabus that is placed to this case may not be of authority, but I will read it:

"A municipal corporation, like an individual, is liable for injuries resulting to the property of others from the acts of such corporations, though acting within the scope of its corporate authority, and without any circumstances of negligence or malice."

And it was expressly found in this case that there was no malice or illegality, and that the town council were authorized by law to grade the street; that they acted strictly within their authority, and performed the work judiciously and discreetly, and for the sole purpose of improving the street, and without any intention of injury to the plaintiff or his property. The court refers to the case of *Rhodes* v. *Cleveland*, 10 Ohio, 159, and say:

"The sole question in this case is whether a municipal corporation can be made liable for an injury resulting to the property of another by an act of such corporation, strictly within the scope of its corporate authority, and unattended by any circumstances of negligence or malice.

"The case of *Rhodes* v. *The City of Cleveland*, 10 Ohio, 159, with admirable good sense and strength of reason, answers this question

by asserting that corporations are liable, like individuals, for in-·juries, although the act was not beyond their lawful powers."

Further along the court quotes the declaration of the court in the Rhodes case, as the basis of recovery being on the ground of good morals and ethics, and they say:

"There is another reason: If a municipal corporation, for the good of all within its limits, see proper to cut down a street, it is nothing more than right that an injury there done to a single individual should be shared by all."

The same doctrine is substantially announced in the rehearing of this case, reported in 18 Ohio, 229. I will read a pargraph from the opinion, on page 232:

"That a city or town should be clothed with sufficient power to accomplish all its useful and necessary objects, may be granted. It seems to be indispensable that a power should be given to it for the regulation of its streets; and in the exercise of such a power, injury to the property of individuals, amounting sometimes to a destruction of it, may become unavoidable. But when the public interest requires the sacrifice of private property, a very clear principle of justice requires also a compensation to be given for the injury.

"The judgment which we are reviewing sanctions that principle, and gives the compensation. It is not without support from that section in the Constitution of the state, which holds private property inviolate, but subservient to the public welfare, provided compensation be made to the owner. The above section has come under consideration of the court upon various occasions in its bearings upon the public improvements of the state; upon private companies authorized to engage in the construction of works of public interest, and upon city and town corporations. And in reference to them all, it is now maintained that powers may be conferred upon them that are necessary to carry out the objects for which they were created; but when, in the lawful exercise of such power, individual property must be taken, sacrificed or injured, they will be held liable to the party injured, to make good his loss. If the act conferring the authority provides itself the mode of rendering the satisfaction, that mode will be followed; if it points out no course of proceeding, or if the remedy so provided is denied to the injured party, he may still appeal to the court and find redress. It will be perceived, therefore, that the principle established by the case under review is just; that it is in accordance with the spirit of the

Constitution upon the point in controversy, and with other decisions of the court, as well as with the decisions of other courts upon the same subject."

But perhaps the leading case upon this subject is the case of *Crawford* v. *Delaware,* 7 Ohio State, 459, in which all the previous decisions of the court were reviewed. I will read, however, only part of the opinion, beginning on page 469:

"Distinct from the right of the public to use a street is the right and interest of the owners of lots adjacent. The latter have a peculiar interest in the street, which neither the local nor the general public can pretend to claim; a private right of the nature of an incorporated hereditament, legally attached to their contiguous grounds, and the erection thereon; an incidental title to certain facilities and franchises, assured to them by contracts and by law, and without which their property would be comparatively of little value."

Further along in this connection it is said:

"But while we recognize the right of property in a street as incident to an adjacent lot, we must also recognize the right of the public to grade and improve the street; and the question, therefore, is: Under what circumstances and to what extent must the private right yield to the public?"

And speaking of the case where the grade has been changed after the erection of improvements, the court say:

"It is as positive and substantial an injury to private property, and as direct an invasion of private rights incident to a lot, as if the erections upon the lot were taken for public use. It comes not within the letter, but manifestly within the spirit of the provision of the Constitution which requires compensation for property taken for public use."

But in this case, the only remedy asked, and the only remedy under consideration by the court, was to recover damages for the taking; and at the time the cause of action arose there was no statute providing any means for assessing compensation for the damages sustained by a change of grade in a street except by an action at law. The court in this case say that it is not within the letter of the Constitution, but within the spirit, and that while they recognize this right of property in the street as incident to

the adjacent lot, they also recognize the right of the public to grade
and improve the street; and the question, therefore, is: Under
what circumstances and to what extent must the private right yield
to the public?

A case which throws considerable light upon this question is the
case of *Cohen* v. *Cleveland,* 43 Ohio State, 190, although it is not
a case to recover damages for a change of grade in a street. It
is a case to recover damages for consequential injuries resulting
from the erection of the Superior street viaduct, in this city,
whereby the right of access to plaintiff's property was interfered
with. There was no law at that time, and I believe there is none
now, which provides any method for assessing the compensation for
the damages sustained in that manner. The court first held that
the acts of the Legislature under which the viaduct was con-
structed, by reason of which construction of the viaduct the dam-
age was caused, were valid, and say:

"These acts are supplementary to the Municipal Code; no objec-
tion which has been urged against their validity in this case is
tenable; and, in our judgment those acts, in connection with the
Municipal Code, contain ample power for the erection of such
structure. Hence the viaduct can not be, in contemplation of law,
a nuisance, but is a lawful structure; and there is no complaint
that there was negligence, malice, or bad faith which caused injury
to the plaintiff.

"But the right of Cohen to damages is not determined adversely
to him by these facts. He is not entitled to compensation under
the letter of the Constitution, Article I, Section 19, but may be
entitled to such compensation in analogy to that provision. In-
juries resulting from the change of established grades in streets,
though made in accordance with the statutes and without negli-
gence or malice, and other injuries of a kindred character, have
been held to afford ground for the recovery of damages against
municipal corporations."

And here the court cites many of the earlier cases on that sub-
ject.

Now, in that case, the court had before them the act for the
construction of the Superior street viaduct, making no provision
for the assessment of compensation. The damages sustained were
of a kindred nature to the damages sustained by reason of the
change of grade in a street. The court say as they said in a pre-

vious case in respect to change of grade in the street, that the property owner is not entitled to compensation under the letter of the Constitution, Article I, Section 19, but may be entitled to such compensation in analogy to that provision.

It seems to me that the principle is that an abutting owner has a right in the street, which is a property right, or in other words, is property, but this property right is subject to the right and duty of the municipality to put and maintain the street in suitable condition to answer all the purposes of the acquisition. To this public right all private rights of lot owners are necessarily subordinated.

The basis of the right to recover damages for change of grade is, that the property owner has, by reason of the acts of the city, been misled to his injury, and for such injury it is just that he should receive compensation, or that, for the general public good, it is necessary that an injury be done to an individual, and it is not just that he should bear the whole loss.

If the owner's right be placed on the basis of property within the meaning of the Constitution, the right of access to his land would be the property right invaded by a change of grade. In that view there would be no ground for the distinction between damages to improved and unimproved lots, or between the case of improvements erected prior to the establishment of a grade and those erected afterwards.

The distinction between the electric light and telegraph cases, referred to by counsel for plaintiff, is that the erection of private poles and wires by a company is a new and additional burden upon the street, while the grading of a street is a lawful street purpose, contemplated in the original acquisition. See 66 O. S., 166; 51 O. S., 348.

I am therefore of the opinion that while the right of the abutting property owner may be worked out as far as possible in analogy to the provisions of Article I, Section 19 of the Constitution, and that that constitutional provision not including by its terms the case of damages for abutting property owners, but the right to such damages being only within the spirit of the Constitution, it is competent for the Legislature to authorize the municipal corporation and other public corporations to level and im-

prove streets without providing in advance for the assessment of compensation, or without providing means for the ascertainment and assessment of damages, otherwise than in an action at law to recover the same. If any other doctrine be accepted, a large portion of the statutes which have been in force in this state from the very beginning of the state, would be invalid. There is to this day no statute authorizing the county commissioners or the trustees of townships to provide for the assessment of damages caused by a change of grade in a public highway; and yet the Supreme Court has applied the same principle to those cases as has been applied to the cases of change of grade in streets of a municipal corporation. And in a comparatively recent case, reported in 50 O. S., 628, the right to recover compensation was allowed to a property owner outside of a municipal corporation, on the ground that the statute made no provision for assessing compensation, or for impanneling a jury to assess such compensation.

I do not think that any public policy requires the application of so strict a rule as is contended for here by the plaintiff. There is no suggestion that the City of Cleveland is not amply responsible. It appears that the work which is contemplated is one of great public interest; and in fact our Supreme Court has said in a case that the changing of grade crossings is a matter which ought to be favored by the courts. That being so, and public interest being so greatly involved here, there being no danger of any substantial loss to the plaintiff except as to the mode of recovering his compensation, I do not think that any private right would be conserved or public right promoted by allowing this injunction, and it will therefore be refused.

*Ford, Snyder, Henry & McGraw*, for plaintiff.

*Baker, Estep, Payer, Carey & Adams, Brewer, Cook & McGowan, Squire, Sanders & Dempsey*, for defendant.