### QUINBY v. CITY OF CLEVELAND, OHIO, et al.

#### (Circuit Court, N. D. Ohio, E. D.   June 24, 1911.)

#### No. 8,139.

1. MUNICIPAL CORPORATIONS (§ 385*)—EMINENT DOMAIN (§ 119*)—REMEDY—ABOLITION OF GRADE CROSSINGS—RIGHTS OF ABUTTING OWNER.

    Where an ordinance for abolishment of a grade crossing provided for depression of the street two or three feet, and for erection of masonry abutments and steel columns, the abutting property owner's damages were of two classes; one for change of grade and the other for the erection of structures; for the first he must look to the city; and as to the second his property rights must be purchased or appropriated by the railroad before the work could proceed.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 385; * Eminent Domain, Dec. Dig. § 119.*]

2. CONSTITUTIONAL LAW (§ 251*) — DUE PROCESS — LIMITATION OF NATIONAL POWER.

    The fifth amendment to the federal Constitution is a limitation operating solely on the national government, and cannot be invoked by plaintiff, seeking to enjoin a municipal corporation and a railroad from proceeding under an ordinance abolishing grade crossings on the ground that it is a taking of the plaintiff's property.

    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 726–732; Dec. Dig. § 251.*]

3. CONSTITUTIONAL LAW (§ 292*)—DUE PROCESS OF LAW—RIGHT OF ABUTTING OWNERS IN STREETS.

    The state courts must finally determine the extent, limitations and the qualifications of an abutting owner's rights and easements in a street.

    [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 292.*]

4. EMINENT DOMAIN (§ 119*)—ADDITIONAL BURDEN ON HIGHWAY—RIGHT OF ABUTTING OWNER.

    Under the laws of Ohio, it would seem that the owner of property, when a street is dedicated to public use, retains a property right in the highway, which is as much property as the lot itself, but that, in dedicating the street, he does so in contemplation of the public uses to which the street may be put, and that when the street or highway is used for a public purpose, in contemplation of such use, his property right in the street is not taken, but may be damaged to some extent, which damage he has the right to recover.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*] ·

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** EMINENT DOMAIN (§ 75*)—RIGHT IN HIGHWAYS—ABOLITION OF GRADE CROSSINGS—COMPENSATION.

Under Const. Ohio art. 1, § 19, providing that when private property is taken for making or repairing roads, compensation shall be made to the owner, and in all cases where private property shall be taken the compensation therefor shall first be made, the state Legislature was authorized to pass the grade crossing act (Gen. Code Ohio, §§ 8863–8907), and the municipalities legislating under provisions of that act can proceed with the improvement, and so far as the improvement relates to an ordinary change of grade, and is not an appropriation within the meaning of the Ohio laws, they may provide that the compensation be made after the improvement has been completed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 198, 199; Dec. Dig. § 75.*]

**6.** MUNICIPAL CORPORATIONS (§ 404*)—CHANGE OF GRADE OF STREET—RIGHTS OF ABUTTING OWNER—INJUNCTION.

An abutting owner was not entitled to enjoin a municipality and a railroad company from proceeding under an ordinance for the abolition of grade crossings on the ground it authorized payment of damages by the city only on consent by the railroad company, the railroad company being required to pay 65 per cent. of the cost of the improvement.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 404.*]

**7.** MUNICIPAL CORPORATIONS (§ 385*)—GRADE CROSSING ACT—SETTLEMENT OF DAMAGES.

Under Gen. Code Ohio, § 3830, a municipality, proceeding under the grade crossing act (Gen. Code Ohio, §§ 8863–8907) for the abolition of a grade crossing of a railroad, may make settlements of claims for damages to abutting owners without judicial determination of the amount due.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 385.*]

**8.** MUNICIPAL CORPORATIONS (§ 385*)—ABOLITION OF GRADE CROSSINGS—VALIDITY OF ORDINANCE—CONTRACT WITH RAILROAD.

Under Gen. Code Ohio, § 8883, relating to the abolition of grade crossings by a municipality, and providing that the municipality and the railroad company shall agree as to what part of the work shall be done and fix the amount allowed or credited to the company for doing the work, it was no objection to the validity of an ordinance thereunder, that the city therein agreed to pay the railroad company more than 35 per cent. of the cost of doing the work.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 385.*]

**9.** INJUNCTION (§ 12*)—APPREHENDED INJURY.

Claimant, seeking to enjoin a municipality and a railroad company from proceeding under an ordinance for the abolition of a grade crossing, alleging that the fund provided would be exhausted before plaintiff and other abutting owners were compensated, *held* to show only apprehended injury, for which injunction would not issue.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 12; Dec. Dig. § 12.*]

In Equity. Bill by Edward M. Quinby against the City of Cleveland, Ohio, and others, to enjoin proceedings in enforcement of an ordinance relating to abolishment of railroad grade crossings. Writ refused.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Norton T. Horr and Shirley H. Tolles, for plaintiff.

Newton D. Baker, City Sol., and W. D. Wilkin, Asst. City Sol., and Squire, Sanders & Dempsey, for defendants.

DAY, District Judge. Edward M. Quinby, a resident and citizen of the state of Pennsylvania, has brought this suit asking for an injunction against the defendants, residents and citizens of the state of Ohio. It has been stipulated and agreed between the counsel in this case that the matters should be, and they were submitted to the court as upon final hearing; and that the matters in controversy should be heard upon the agreed statement of facts filed in the case, the bill, the answer of the defendants, and the replication.

The bill urges, in part, that the plaintiff, with other nonresidents of the state of Ohio, is seised in fee simple of certain premises located in the city of Cleveland on the northerly side of Euclid avenue and the easterly side of East Fifty-Fifth street, immediately east and north of the premises now occupied and used by the Pennsylvania Company, for railroad purposes; that the premises are of the value of over $500,000, and upon the premises is erected a large brick building used for business purposes; that this building is improved with all of the improvements incident to city property, and that from the property in question is an alley, which is used as a method of ingress and egress, extending out from the premises to East Fifty-Fifth street; that the city of Cleveland passed the necessary legislation for the abolishment of grade crossings, where certain railroads cross certain streets in the city of Cleveland; that in connection with said proceedings bonds to the extent and amount of $2,000,000 were duly authorized and issued; that in compliance with said legislation relating to the abolishment of grade crossings, the plaintiff, and others in interest with him, filed their claims for damages with the city clerk in the sum of $70,000; that subsequent to the filing of this claim the council of the city of Cleveland passed an ordinance, known as ordinance No. 20,457, which provides in substance for the abolishment of grade crossings of the Pennsylvania Company in Cleveland, including the crossing at Euclid avenue and East Fifty-Fifth street, and further designates the manner and extent of the work to be done; that the Pennsylvania Company, operating the Cleveland & Pittsburg Railroad Company, crosses many other streets in the city of Cleveland than those named in the ordinance, and that other railroad companies operate at grade across a very much larger number of streets than does the Pennsylvania Company; that the sections of the city where the Pennsylvania railroad company crosses the streets are devoted to manufacturing, mercantile, and business purposes; that the owners of property abutting upon the streets named in the ordinance have filed claims with the city clerk in excess of $2,800,000; that the cost recited in ordinance No. 20,457 of $2,975,000 is only an estimate and not binding upon either the city or the railroad company; that the estimate will be exceeded by the cost of the undertaking in the amount of damage to abutting property holders; that the city of Cleveland has exhausted its limitation fixed by law for the expenditure of money for the elimination of grade cross-

ings without the consent of the electors, and that no further money can be secured for that purpose without submission to and a favorable vote by the electors of the city of Cleveland; that it has long been the custom of the city officials, council, and other authorities, in cases of authorized public improvements, where the council has decided to postpone the judicial inquiry into the claims asserted for damages until after the completion of the work to proceed to adjust and settle and pay such claims which have been agreed upon in settlement; that it is the purpose and intention of the city of Cleveland to proceed with the work in sections, beginning at the southerly end of the project and completing one or more before beginning work on another elevated crossing, and this will postpone the judicial inquiry into the damage claim for a period of 3 to 10 years; that the defendants refuse to pay damages without the consent and approval of the Pennsylvania Company; that the defendants intend to permit the Pennsylvania Company to do all of the said work and furnish the plans and material and to pay the said company therefor as the work progresses, from the funds raised for such purpose, 35 per cent. of the cost, together with 10 per cent. added; that defendant has in progress negotiations with a number of railroad companies aimed at the elimination of grade crossings, to such an extent that if they proceed with ordinary diligence the amount of money expended out of the fund will exhaust the fund before there can be a lawful determination of the plaintiff's claim; that the amounts which the city will be required to pay out of the fund to the Pennsylvania Company for doing the work called for by ordinance No. 20,457 will exceed the sum of $1,000,000; that this money will be paid practically in unlawful preference to the claims of the plaintiff and other private owners; that there is a probable and reasonable certainty that those payments, together with other payments which are contemplated by the city will exhaust the fund provided for by law for the payment of said claims when judicially determined; that the plaintiff and others in like position will thereby suffer irreparable damage and be left without any adequate remedy in law or equity, or otherwise; that he will not be able to secure compensation for the damages which he will suffer to his property, and which will result in a denial to him of that undelayed justice to which he is entitled by the Constitution of the state of Ohio, and in the taking of his property without due process of law to which he is entitled by the Constitution of the United States and the amendments thereto, more particularly the fifth and fourteenth; that the property of the plaintiff would be seriously damaged in value by the proposed elimination of the grade crossing by the erection upon the street in front of his premises of numerous piers to support the tracks of the railroad company, as shown by the plans and specifications of said improvements, and that he will be subjected to large expenditures in and about the readjustment and reconstruction of his premises to a state of usefulness at the altered street grade, and to a serious loss of rentals which the progress of the work will necessitate; that the loss and damage will amount to more than $40,000; that the Pennsylvania Company is now operating on its right of way across Euclid avenue and East Fifty-Fifth street two rail-

road tracks, and such operation has become, in fact, a public nuisance; that the elimination of the grade crossing provided for by the ordinance has for its apparent object, the abatement of that nuisance, and that the proceeding is taken for the advantage and benefit of the railroad company; that the ordinance gives the company a right to operate *four* tracks across both streets, thereby giving the company not only immunity from liability for accidents and abating the nuisance now maintained by it, but imposing upon the highway the double burden in favor of the company; that the improvement is a private improvement resulting primarily to the benefit of the Pennsylvania Company; that any postponement of the compensation for resultant damages, or the casting of any portion of either the permanent burden or the temporary inconvenience upon the owners of adjacent property without prior compensation, would be unlawful and inequitable; that the plaintiff brings this action in his own right as an owner of property damaged, and also as a taxpayer. He further states that the contemplated acts of the defendant are unlawful and inequitable in several particulars. And, in conclusion, he prays that the defendants and their successors in office be enjoined from proceeding in any particular in the enforcement of the ordinance No. 20,457, or of any other corporate action of like effect, unless the city first make adequate provision and speedy determination of all claims lawfully filed for damages resulting therefrom by a court of competent jurisdiction; that the defendants be enjoined from paying out any of said fund in satisfaction of damage claims, unless the amount so to be paid be first determined by a judicial inquiry, and that they be enjoined from paying to the Pennsylvania Company more than 35 per cent. of the actual cost or bona fide contract price for the doing of said work; and that they be enjoined from paying out of the proceeds of said bond issue, or from entering into any engagement so to do for any other purpose than that declared in the ordinance No. 20,457, unless it be made first to appear by determination of the amount due upon said damage claims, or otherwise, that there be an available surplus, and then only to the extent of such surplus, and also prays for such other further relief to which he may be entitled.

The defendants filed an answer to the bill of the plaintiff and after admitting many of the formal allegations alleged that by a vote of the electors of the city of Cleveland at an election held on July 22, 1910, an issue of bonds to the amount of $2,000,000 was duly authorized for the purpose of defraying the city's portion of the cost of abolishing the railroad grade crossings of streets and highways; that the bonds have been sold and delivered and the proceeds thereof in a total sum in excess of $2,000,000 is applicable exclusively to the purposes for which they were issued, and that the Cleveland & Pittsburg Railroad Company, operated by the Pennsylvania Company, crosses at grade a number of streets in the city of Cleveland, which are not specifically named in any of the resolutions referred to, and that other railroads operate a number of tracks across various streets in the city of Cleveland.

It is further admitted that the cost recited in the ordinance No. 20,457 of $2,975,000 is an estimate; that it does not bind the city nor

the Pennsylvania Company, but that it was made in good faith upon the calculations of competent engineers and officials of many years' experience in a like line of work. The agreed statement of facts recites in detail the municipal legislation leading up to the issue of bonds, and the determination to proceed with the elimination of various grade crossings in the city of Cleveland; that the fund realized from the sale of bonds is as follows; that the estimated cost of $2,975,000 recited in ordinance No. 20,457 is the result of independent calculations made by the engineers and officials of the city of Cleveland and the Pennsylvania Company, and its elements are:

   a. Cost of construction, labor and materials................$2,675,000
     Damage to abutting property owners......................  300,000

That no estimates of the cost of altering or abolishing grade crossings of the Pennsylvania Railroad Company at various other streets in the city of Cleveland have been submitted. On all of the grade crossing work in the city of Cleveland the plan and method of settling, adjusting, and adjudicating damage claims, which is provided for in ordinance No. 20,457, was pursued, and never during any of such work or the proceedings connected therewith has any claimant of damages been unable to obtain the amount agreed upon as a settlement of his claim or the payment of any judgment obtained upon such claim by reason of any deficiency or inadequacy of the fund appropriated for that purpose. That the estimated cost recited in the ordinance was prepared by men of experience in a like line of work, and that the term "force account," used in ordinance No. 20,457, means the actual cost of doing the work, including labor and material, with 10 per cent. added to cover the cost of superintendence and use of tools. That the city of Cleveland has reached the limit of bonded indebtedness at present authorized by law without a vote of the electors, but that on the 1st day of October, 1911, the city of Cleveland would have power, if existing statutory authority and assessed valuation of property remain unchanged, to issue additional bonds to a sum in excess of $6,000,000, without vote of the electors, for the purpose contemplated by the ordinance; that within two weeks after the service of notice required by resolution, claims in the amount of $2,161,765 were filed, and after these two weeks, claims in the amount of $225,984 were filed for damages growing out of the improvement provided for in ordinance No. 20,457; that in addition to this claims in the amount of $446,160 were filed by owners of property which does not abut upon any portion of the streets, the grades of which will be changed by the improvement; that the Pennsylvania Company intends to provide for all of the work required by ordinance No. 20,457, and that the work will be begun at the northerly end of the project and prosecuted from that point in order as the crossings of the streets are reached in the progress of the work.

The following matters are complained of in plaintiff's bill: First. In the postponement of judicial inquiry into the claim for damages until after the completion of the work. Second. In neglecting and refusing to provide for the payment of damages, except with the consent of the Pennsylvania Company. Third. In attempting to settle and

pay any damage claims without judicial determination of their just amount. Fourth. In agreeing to pay to the Pennsylvania Company more than 35 per cent. of the actual cost of doing the work. Fifth. In entering into other engagements for the disposition of said fund to an extent which, if made, will exhaust it before the plaintiff or others in the same situation are paid. In order to intelligently pass upon these various grounds of complaint, it is essential that first of all a correct understanding is had of the extent of plaintiff's injury which would result from the contemplated work. .

A reference to section 8 of the ordinance known as No. 20,457 discloses the fact that at the intersection of the railroad tracks with Euclid avenue and East Fifty-Fifth street, the streets will be depressed not to exceed 2.8 feet in Euclid avenue, and 3.3 feet in East Fifty-Fifth street. This section also indicates that masonry abutments and steel columns will be required. The plans and specifications, which are somewhat incomplete, indicate that piers and columns will be required in the construction of this work. The damages to plaintiff's property would then be divided into two classes, damages for change of grade, and damages by reason of the erection of the piers and abutments. That a portion of the damage suffered by the plaintiff would be the class of damage contemplated in change of grade cases is established by several decisions, although this matter has not been considered to any considerable extent by the courts of Ohio.

Judge Tayler, in December, 1908, in passing on a motion to strike from a petition in the case of Herbert L. Pratt v. City of Cleveland and the Pennsylvania Company, 191 Fed. 65 in the Circuit Court of this jurisdiction, says, after quoting certain sections of the Ohio statutes applicable to the situation at bar:

"Taking these provisions of the statute providing for the method by which grade crossings may be abolished in connection with the general provisions of the statute just referred to respecting the liability of a railroad company for damages to abutting property owners by reason of its change of line or grade, we are led, as it seems to me, to the inevitable conclusion that the damages referred to in the statute providing for the abolishment of grade crossings does not contemplate allowance of incidental damages to an owner of property abutting the railroad. The abutting property referred to in the statute is the property abutting the street. This becomes more manifest when we discern that in the case of an improvement of the street, where abutting property owners have improved their property with respect to an established grade, the property owner always has a right of action against the city where a change of grade is made. So the law applicable to the case of a change of grade due to the abolishment of grade crossings is to the same effect as the law which allows damages for change of grade for any other reason. It would, therefore, seem that the statute providing for the abolishment of grade crossings was intended to make provisions for the payment of such damages as are ordinarily caused by the change of grade of a street, and, by requiring the claims to be filed before the improvement is commenced, those who are required to pay the cost of the improvement may be fully advised as to the extremity of the obligation which would be laid upon them in consequence of the making of the improvement."

This same principle is recognized in the case of East End Banking & Trust Company v. City of Cleveland et al., 1 Ohio Nisi Prius (N. S.) 493, affirmed by the Circuit Court of the Eighth Judicial Circuit of Ohio.

Again, the Supreme Court of Ohio, in the cases of Schimmelmann et al. v. Lake Shore & Michigan Southern Railroad Co., 83 Ohio St. 356, 94 N. E. 840, expressly recognizes the doctrine that the damages for the abolishment of grade crossings, in so far as the municipality is concerned, is similar to the ordinary change of grade cases.

In reference to the piers and abutments, in my opinion, the damages resulting from the erection of these necessary incidents to the structure are covered by section 8888 of the General Code of Ohio, which provides that before the improvement can proceed the railroad company must appropriate the interest of the property holders necessary to permit the erection of piers or supports to the structure necessitated by the proposed improvement.

[1] The plaintiff in this action, then, must look to the city for damages resulting from change of grade, and if he is damaged by the erection of piers and abutments, all incidents of the structure, his property rights in reference to such matters must be purchased or appropriated by the railroad company before the actual work of the improvement can proceed by the erection of structures affecting his property rights.

In support of the first ground of complaint, the plaintiff relies upon constitutional grounds, and specifically relies upon the fifth and fourteenth amendments to the Constitution of the United States, and section 19 of article 1 of the Constitution of Ohio.

[2] The fifth amendment to the Constitution of the United States is a limitation, operating solely upon the national government, and need not here be considered.

The fourteenth amendment to the Constitution of the United States provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] In order for this fourteenth amendment to have application in the case at bar, it is important to inquire whether any property is taken within the contemplation of the law. It has been established that the state courts must finally determine the extent, limitations and the qualifications of an abutting owner's rights and easements in a street. Sauer v. City of New York, 206 U. S. 547, 548, 27 Sup. Ct. 686, 51 L. Ed. 1176.

[4] An examination of the Ohio authorities determines and defines the property rights of the plaintiff. If, then, in so far as the city of Cleveland is concerned, the right of relief to which the plaintiff is entitled is similar to that of a claimant in an ordinary change of grade suit, it is apparent that many of the difficulties of the situation are disposed of. The development of the peculiar doctrine which prevails in Ohio, in reference to the consequential damages resulting from the change of grade of a street has been so often traced by the Ohio courts and so often commented upon, that it is not necessary to refer to these decisions at this time. A careful reading of all the Ohio decisions seems to indicate that the owner of property, when a street is

dedicated to public use, retains to himself a distinct property right in the highway, which is as much property as the lot itself, but that in dedicating the street he does so in contemplation of the public uses to which the street may be put, and that when the street or highway is used for a public purpose, having in mind and in contemplation such use, his property right in the street is not taken, but may be damaged to some extent, and the right to recover such consequential damage is recognized by the Ohio courts.

Article 1, § 19, of the Constitution of Ohio, reads as follows:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner, in money, and in all other cases where private property shall be taken for public use. a compensation therefor shall first be made in money, or first secured by a deposit in money."

The improvement contemplated and the statutes governing such improvement are justified under the police power of the state. The General Code provides (section 3714) that:

"The council shall have the care, supervision and control of public highways, streets, avenues, alleys * * * within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

The Supreme Court in the Schimmelmann Case, hereinbefore referred to, recognized the fact that the abolishment of grade crossings is a commendable purpose, beneficial to the public, and that the plaintiff would be entitled to recover substantial consequential damages.

In the case of Cohen v. Cleveland, 43 Ohio St. 190, 1 N. E. 589, which has many similar features to the case at bar, the court in its opinion at page 193 of 43 Ohio St., at page 590 of 1 N. E., says:

"He is not entitled to compensation under the letter of the Constitution, article 1, § 19, but may be entitled to such compensation in analogy to that provision. Injuries resulting from the change of established grades in streets, and without negligence or malice, and other injuries of a kindred character, have been held to afford ground for the recovery of damages against municipal corporations."

In the case of the City of Toledo v. Preston, 50 Ohio St. 361, on page 366, 34 N. E. 353, on page 355, the Supreme Court of Ohio said:

"Section 5, of article 13, does not apply to cases of property taken to construct roads which shall be open to the public without charge, in which class the streets of our towns and cities belong. The rights of the owners of property taken and applied to such use falls within the protection guaranteed by section 19, of article 1, by the provisions of which compensation is not required to be made before the property is taken."

[5] In so far as the first complaint of the plaintiff is concerned, I am of the opinion that the damages to his property are such damages as would arise in an ordinary change of grade case, and that bearing in mind the provisions of article 1, § 19, of the state Constitution, it is competent for the state Legislature to pass such legislation as the so-called grade-crossing act (Gen. Code Ohio, §§ 8863–8907), and that the municipalities legislating under the provisions of that act can

proceed with an improvement such as the one involved in this case, and in so far as the property rights in question are concerned, provide that compensation be made after the improvement has been completed. This is work of a great public necessity and importance, and an application of any other doctrine would neither be equitable nor in accordance with the Ohio decisions.

By the provisions of section 8888 of the Ohio General Code, the plaintiff is afforded a complete and adequate remedy in so far as the erection of piers or abutments is concerned, inasmuch as the railroad company must either purchase or condemn his property rights before any piers or abutments can be erected which would in any way interfere with his property in fee, or the property rights connected with it.

[6] Second. In neglecting and refusing to provide for the payment of damages, except with the consent of the Pennsylvania Company. This ground of complaint is evidently based on the twenty-fourth section of ordinance No. 20,457, the claim being made in argument that the city has placed it beyond its power to settle any damage except upon consent of the attorneys of the Pennsylvania Company. It is difficult to perceive how this contention is sound; the railroad company being required to pay 65 per cent. of the cost of the improvement, it is only reasonable that it should be represented in the determination of damage claims, and in their adjustment and settlement.

[7] Third. In attempting to settle and pay any damage claims without judicial determination of their just amount. It is generally recognized that a municipal corporation, the same as an individual, unless otherwise expressly prohibited by statute, has the same power to adjust, arbitrate and settle disputed claims as any one else. Springfield v. Walker, 42 Ohio St. 546. The grade crossing act nowhere prohibits such settlements, and the right to make adjustments is recognized in the statute relating to municipal corporations, especially section 3830 of the General Code.

Fourth. In agreeing to pay to the Pennsylvania Company more than 35 per cent. of the actual cost of doing the work. Section 23 of the ordinance, known as No. 20,457, provides, in substance, that all work to be done by the railroad company under the provisions of this ordinance, by which the city is required to pay part of the cost, shall be done by contract or "force account," said contract or "force account" being approved by the city engineer before the work is commenced. Payments to be made upon said work to be by monthly estimates and approved by the city engineer and the chief engineer of the railroad company, based upon said contract or "force account" within 30 days of the rendering of such monthly estimates. The elements of the "force account," as I understand it, are actual cost to the railroad company of material and labor, plus 10 per cent. added to cover the cost of superintendence and use of tools.

[8] That such procedure is legal is established by section 8883 of the General Code, which provides, as follows:

"Such municipality and railroad company shall agree as to what part of the work shall be done, and also fix the amount which shall be allowed or credited to the company for doing the work."

It simply allows the party doing the work compensation for accomplishing such work.

Fifth. In entering into other agreements for the disposition of said fund to an extent which, if made, will exhaust it before the plaintiff or others in the same situation are paid.

[9] I do not think this claim is supported by sufficient evidence to entitle the plaintiff to the equitable relief he seeks. The legislation passed by the city, taken as an entirety, does not provide that the total amount of the city's portion of the cost of eliminating the crossings shall be paid from the $2,000,000. On the contrary, it appears that estimates have been made by experienced persons, and the municipal authorities are presumed to act in good faith, with a reasonable regard for the rights of the citizens and property owners of the municipality. The court cannot grant an injunction for a mere apprehended injury; the injury must be made to appear with reasonable certainty. The municipality has said that the fund established is sufficient, and there is no evidence sufficient to show anything to the contrary. The evidence does not establish the fact that the fund appropriated by the city to meet claims for damages is inadequate. Taking into consideration the bill, the answer, and agreed statement of facts, the inadequacy of the fund is certainly not established. The city of Cleveland is undoubtedly responsible, and inasmuch as the plaintiff's claim bears interest from the time of the change of the grade of the street, he has a full, complete, and adequate remedy. The city is made the responsible party to this contemplated improvement and cannot escape liability therefor. The plaintiff has complied with the condition precedent contained in the statutes as to filing of claim for damages, and by proceeding under the statutes and having obtained a judgment, the same would either be paid out of the fund provided for that purpose, or under the provisions of section 4517 of the General Code, the judgment must be paid by the sinking fund trustees.

There can be no weight to the contention relating to the application of the Ohio decisions which establish the doctrine that where a street is put to a use which is not within the purpose of its original acquisition, but which constitutes the placing of an additional burden upon the abutters thereto, there is in effect a taking, for which compensation must be first made; it not being for the making of repairs to roads and the use not being within the contemplation of the parties when the street was dedicated to public use, or acquired for a public highway, inasmuch as any property rights which are interfered with in this manner must be purchased or acquired by the railroad company under the provisions of General Code scetion 8888, in the grade crossing act, and section 22 of ordinance No. 20,457.

The plaintiff then has his remedy as in an ordinary change of grade case, in so far as the municipality is concerned, and neither the railroad company nor the city can erect piers, abutments, or similar structures until the plaintiff is first compensated for such injury as would result therefrom, as the requirements of the statutes are plain in reference to the railroad company's duty to make such compensation under General Code section 8888.

The work contemplated is one of great importance to the municipality and its citizens. It is planned to protect and save life. No substantial rights of the plaintiff are taken from him without due process of law, but, on the contrary, he has a full, complete, and adequate remedy for every damage resulting to him, be it direct or consequential. No private right of his would be conserved by the granting of the injunction, and the same will therefore be refused.