## PROCEEDINGS FOR ABOLISHING A GRADE CROSSING.

Common Pleas Court of Hamilton County.

THE CINCINNATI UNION STOCK YARD COMPANY v. THE CITY
OF CINCINNATI ET AL.[*]

Decided, March, 1913.

*Action by Tax-Payer—Ordinance May Contain Only a Single Subject
Though Involving Matters of Detail—Separation of Grade Cros-
sings—Assessment of the Cost.*

1. Where the city of Cincinnati through its solicitor brought an ac-
tion against the director of public service and a railroad company
to test the validity of ordinances providing for the abolishment of
the Hopple street grade crossing, in which case the ordinances
were set out in full in the petition, and the case was contested by
the railroad company, a final judgment in such cause is *res
adjudicata* between the same parties not only as to what was de-
termined, but also as to every other question which might have
properly been litigated in the case.

2. In such a proceeding the city solicitor appears on behalf of all the
tax-payers of the city and an individual tax-payer can not there-
after maintain an action as such against the city and the rail-
road company to test the validity of the same ordinances.

3. A property owner abutting on the proposed improvement may
however bring such action when he can show irreparable injury.

4. An ordinance providing for the separation of grade crossings does
not contain more than one subject where it provides in its pre-
amble and the body thereof for other proceedings necessary to
the abolishment of the grade crossing but which require separate
ordinances to effect the same. The validity of such an ordinance
"is to be determined not by its form but in the light of the mis-
chief the statute was intended to prevent." *Heffner* v. *Toledo*, 75
O. S., 413.

5. Where an ordinance recites both in the preamble and in the body
thereof that in the separation of a grade crossing, the present cros-
sing at grade is over a forty foot street, and that it will be bene-
ficial to the city to widen the street to sixty feet before con-
structing the overhead crossing, but that no part of the widening
is necessary to the abolishment of the grade crossing as it exists

---

[*] Affirmed by Court of Appeals (to be reported).

at present, and that the railroad company is not to bear any part of the cost of widening the street twenty feet or of the additional twenty foot overhead crossing, such an ordinance is not invalid because it charges the railroad with only its statutory proportion of the cost of abolishment of the existing forty foot grade crossing.

*Paxton, Warrington & Seasongood,* for plaintiff.

*Stanley W. Merrell,* Assistant City Solicitor, for City of Cincinnati.

*Harmon, Colston, Goldsmith & Hoadly,* for B. & O. R. R. Co.

MAY, J.

The plaintiff, the Cincinnati Union Stock Yard Company, a corporation organized under the laws of Ohio, filed its petition in this cause in a dual capacity. It alleged that it is a tax-payer of the city of Cincinnati and brings this action as such on behalf of the city of Cincinnati and also individually. The necessary allegations requesting the city solicitor of the city of Cincinnati to bring this suit and his refusal are also set out in the plaintiff's petition.

The plaintiff further states that it made the request of the solicitor to apply for an order of injunction to restrain the misapplication of the funds of the city, the abuse of its corporate powers and the execution and performance of a contract made in behalf of the city in contravention of the laws governing it, relating to a proposed abolition of the crossing of grade of Hopple street with the tracks of the defendant, the Baltimore & Ohio Southwestern Railroad Company, by building a viaduct, raising tracks and vacating a portion of the streets covered by the tracks and the purchase or condemnation of certain property for the extension of certain streets rendered necessary and in connection with said project.

The plaintiff further alleges that as an individual it operates a stock yard company and owns and uses in connection with its business other structures which abut on Hopple street and that it will suffer great damage because of this improvement.

The petition also sets forth that on September 5, 1905, the city council passed an ordinance, numbered 1048, declaring it necessary to abolish grade crossings along the line of said rail-

road within the limits of the city, among which was the Hopple street grade crossing; that on or about October 7, 1907, council passed an ordinance, numbered 141, providing for the separation of grade at the intersection of Hopple street and the tracks of the B. & O. S. W. R. R.; that this ordinance was amended by ordinance No. 1074, passed March 22, 1909, which ordinance, together with the amendments thereto, is the basis of the proposed agreement for the abolition of said grade crossing.

Plaintiff further alleges that the ordinance and amendment thereto are invalid for the following reasons:

1. That it contains more than one subject, embracing separation of grades, the proposed widening of Hopple street, the proposed vacation of a portion of Hopple street, the proposed raising of the grade of said railroad tracks five feet over Hopple street.

2. That said ordinance is further invalid for the reason that it does not require the railroad company to pay its share of the cost of said improvement and also of damages.

3. That this ordinance provides that the railroad company should not be obliged to pay any part of the cost to the city in the event that the city does not vacate the portion of Hopple street over which the viaduct is built.

The petition further alleges that notwithstanding the invalidity and illegality of the ordinance, that council, on May 10, 1909, passed an ordinance, numbered 1167, directing the city solicitor to begin a proceeding and that the city solicitor did bring a suit in this court, unmbered 151517, for the condemnation of property for the abolition of said crossing by means of a viaduct, making the plaintiff in this case and other property owners defendants in that case; that said proceedings seek the condemnation of property for the extension of Meeker street, the widening of Hopple street and Bridge avenue, all of which are necessary for the abolition of said grade crossing.

Plaintiff further says that if this proceeding is continued, this plaintiff will suffer irreparable damages, for which it has no adequate remedy at law.

The prayer of the petition is that the city of Cincinnati and the Baltimore & Ohio Southwestern Railroad Company, defend-

ants, be enjoined from proceeding further under Ordinance No. 141, and that the city be enjoined from acquiring or paying for any property in furtherance of such improvement and from proceeding further with the condemnation suit instituted by it, and for all other and further relief as may be just and proper.

The city of Cincinnati filed its separate answer, in which it admitted the fact that the city was proceeding in case 151517 in the common pleas court, brought by virtue of ordinance 1167, to condemn property necessary for the abolition of the grade crossing at Hopple street. The city further admitted that the plaintiff operated a stork yard company and owned property abutting the improvement. The city further stated that the plaintiff in this case was a party to the proceeding in condemnation and had introduced evidence in that case.

For a second defense, the city set out a plea in bar, setting forth that on the 5th day of April, 1912, in a suit in the common pleas court, numbered 150293, entitled the City of Cincinnati, a municipal corporation under the laws of Ohio, by Alfred Bettman, its Solicitor, plaintiff, vs. Victor T. Price, director of Public Service of the city of Cincinnati, and the Baltimore & Ohio Southwestern Railroad Company, a corporation under the laws of Ohio, defendants, named in that proceeding setting forth in said petition in full the various ordinances, to-wit: Nos. 1048, 141 and 1074, relating to the abolishment of the grade crossing at Hopple street.

The answer of the city further states that in its petition in case No. 150293 it had also alleged that the council had, on the 8th day of March, 1909, by resolution duly passed, declared its intent to appropriate property to public use for the extension of Meeker street and the widening of Hopple street and Bridge avenue, rendered necessary by the abolishment of the B. &. O. S. W. Railroad grade crossing at Hopple street, and that on the 10th day of May, 1909, it passed an ordinance, No. 1167, to appropriate property rendered necessary for this improvement, by the terms of which ordinance the solicitor was authorized and directed to have a jury impaneled and to assess damages.

The defendant city further states that this ordinance, No. 1167, is the same ordinance referred to in the plaintiff's petition.

The city of Cincinnati, in its answer, further states that in its petition in case 150293 it set forth all the facts regarding the necessity for expending the city's money for the making of this improvement; that there had been a sale of bonds duly authorized at an election held in November, 1910; that the bonds had been sold and that the proceeds were in the hands of the treasurer; and that in the same petition it was further alleged that the director of public service of the city of Cincinnati and the railroad company intend to and are about to perform the provisions of said ordinances and intend to and are about to proceed with the construction provided in said ordinances for the abolition of said Hopple street grade crossing; and further says that in the petition in case 150293 it is alleged that by reason of the facts stated in said petition and as hereinbefore set forth, said ordinances, numbered 141 and 1074, are illegal and void, and that the execution or performance of said agreement embodied therein would be in contravention of the laws and ordinances governing the city of Cincinnati, and that the payment of any money out of the treasury of said city of Cincinnati in accordance with or for the carrying out of said ordinances would be a misapplication of the funds of said city, and in said petition it prayed that the director of public service and the Baltimore & Ohio Southwestern Railroad Company be enjoined from proceeding or attempting to proceed to carry out the provisions of said ordinances or from constructing or attempting to construct the improvements, structures and appurtenances described in said ordinances and from expending or attempting to expend any moneys of the city of Cincinnati for such purposes, in accordance with said ordinances, and for all other relief general and special.

The defendant, the city of Cincinnati, in its answer, further says that in case 150293 the director of public service filed his answer admitting all the allegations of fact and that the Baltimore & Ohio Southwestern Railroad Company, a defendant in this case, and also defendant in case No. 150293, filed a demurrer on the ground that the facts set forth in said petition were not sufficient to constitute a cause of action, and that afterwards the Hamilton County Common Pleas Court, after due consideration,

the case having been submitted upon the pleadings and the arguments of counsel for the respective parties, did, on the 2d day of May, 1912, render a judgment wherein said court found that said petition did not state facts sufficient to constitute a cause of action either against the director of public service or the Baltimore & Ohio Southwestern Railroad Company, and dismissed both of them from said proceeding, and that no further proceedings were had in said action and that said judgment of the court of common pleas, in case 150293, has become final, and that by reason of such proceedings the matters and things alleged in plaintiff's petition in this case have been adjudicated in favor of this answering defendant, the city of Cincinnati, and the plaintiff herein is estopped to maintain this action.

The Baltimore & Ohio Southwestern Railroad Company filed its answer in this case, in which it sets up as a plea in bar the judgment in case 150293, *City of Cincinnati* v. *Victor T. Price and the Baltimore & Ohio Southwestern Railroad Company.*

At the hearing, evidence was introduced tending to show that if the improvement was made as contemplated in the ordinances, the plaintiff, the Cincinnati Union Stock Yard Company, would suffer damages by reason of the same.

There are three questions in this case:

1.    Is the judgment of the Hamilton County Common Pleas Court, in case No. 150293, a bar to the plaintiff's right as a taxpayer to bring this suit?

2.    Has the plaintiff, in its individual capacity, a right to maintain this proceeding?

3.    Is the ordinance for separation of grade crossing valid?

The plaintiff in this case contends that the issues raised in case 150293, in which the city of Cincinnati, by its solicitor, was plaintiff, and the director of public service and the railroad company were defendants, are not the same as those raised in this case and therefore the plea *res adjudicata* is not well taken.

There can be no doubt that where the city of Cincinnati, through its solicitor, brings a proceeding under Section 4311 of the General Code, for an order of injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any con-

tract made in behalf of the corporation in contravention of the
laws or ordinances governing it, or which was procured by fraud
or corruption, he appears as a representative of all the tax-
payers of the corporation, and where there is a final judgment
in such action "no taxpayer of the corporation has the right
to maintain any action for the same causes, but all become bound
by the judgment finally rendered in such case. All questions
involved in the determination of such suit, or that could or
might have been raised thereby are concluded and finally settled
by the judgment rendered in said case as to all persons whom-
soever, the same being *res adjudicata*. The city solicitor in such
case is the representative of the aggregate tax-payers and in-
habitants; so where, subsequent to a decision, said judgment
standing unreversed, certain tax-payers of a city having re-
quested the present city solicitor to bring an action for the
same causes as in the former suit, and upon his refusal, they
prosecute the same, such tax-payers will be held to stand in
precisely the same relation to the tax-payers and people of the
corporation and to the decision of said former case, that the
present city solicitor would have done had he brought and prose-
cuted the suit, and are equally bound by that judgment."
*Thoms et al* v. *Greenwood et al*, 6 Ohio Dec. Reprint, 320,
Superior Court of Cincinnati, General Term, Yaple, Force and
Harmon, JJ. See also *Mathers* v. *City*, 3 W. L. B., 551, 709.

The plaintiff contends, however, that case 150293 was decided
for the same reasons as those given by Judge Hunt in deciding
case 150239, *City of Cincinnati* v. *Waite et al*. Judge Hunt's
opinion is found reported in 12 N.P.(N.S.), 633, and in that
opinion the judge held that it was not necessary in order to pro-
ceed with the improvements to have a certificate filed under the
provisions of Sections 3806, General Code (Burns law).

This contention, however, is not well taken.

It is sufficient in this state to raise the plea of *res adjudicata*
to allege that the former proceeding was between the same par-
ties and that the subject-matter of the action was the same.
*Covington & Cinti. Bridge Co.* v. *Sargent*, 27 Ohio State, 233;
*Hixson* v. *Ogg*, 53 Ohio State, 361; *Strangward* v. *American
Brass Bedstead Co.*, 82 Ohio State, 121.

In the Sargent case the court held:

"Where a party is called upon to make good his cause of action or establish his defense, he must do so by all proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterwards be permitted to deny the correctness of the determination, nor to re-litigate the same matters between the same parties."

And, in *Strangward* v. *American Brass Bedstead Company,* *ubi supra,* the court held:

"When a matter has been finally determined in an action between the same parties by a competent tribunal, the judgment is conclusive, not only as to what was determined, but also as to every other question which might properly have been litigated in the case."

Now, inasmuch as the ordinances, 141 and 1074, were set out in full in the petition filed by the city of Cincinnati, through its solicitor, in case 150293, which proceeding was an adversary proceeding, the director of public service having filed an answer and the railroad company having filed its demurrer, every question now sought to be raised regarding the illegality of these ordinances might properly have been litigated in that action, and the court having rendered a final judgment in that case, and the same being unreversed, is conclusive upon the plaintiff in its capacity as tax-payer in this suit. If this were not the law there would never be an end to litigation.

This brings me to the consideration of the question, whether the plaintiff has the right as a property owner, who claims that it will be damaged if the improvement is made, to maintain this action.

This proceeding is entirely different from the line of cases cited by the plaintiff in his brief, of which *P., C., C. & St. L. Railway Company* v. *City of Greenville,* 69 Ohio State, 487, is a type. That case and the other cases cited by counsel were based upon the fact that the municipal corporation sought to exercise a power to appropriate property for the purpose of opening and extending streets across a railroad track and was about to file a suit to assess compensation to the holder or owner of such

railroad property without having investigated whether or not such opening or extension of the streets across the property of the railroad company would unnecessarily interfere with the reasonable use by the railroad of its property. The right of the railroad company is based upon the statute, and the court in the Greenville case expressly held that it would restrain the city from proceeding with its condemnation proceedings "until the issue of unnecessary interference with the property of the company had been heard and determined."

In *Hall* v. *Railroad Company*, 85 Ohio State, 148, a railroad company had laid tracks across a street without condemning the property owner's right, such property owner having an easement which the railroad company should have condemned before laying the tracks.

There has been no taking of property in this case as yet. What the city is seeking to do is to condemn and to assess what damages the plaintiff may suffer. So that, on the authorities quoted by the plaintiff, the facts of which are all distinguishable from the facts in the case at bar, it would seem that the plaintiff has no right even as a property owner to maintain this action. However, as there is some authority which holds that a property owner is entitled to the enjoyment of his property until the same is taken from him by due process of law, and as due process of law might mean a valid ordinance upon which the condemnation proceedings should be based, I am of the opinion that the plaintiff may maintain this suit as a property holder abutting the improvement. This necessarily raises the question whether or not Ordinances Nos. 141 and 1074 are valid ordinances.

These ordinances were passed in pursuance of the authority vested in the city council by the Legislature in a law in force (98 Ohio Laws, 191), the title of which is as follows:

"To amend Sections 3 and 8 of an act entitled 'An act to abolish grade crossings in municipal corporations,' passed May 2, 1902, to provide for fixing the mode and time of payment by railroad companies and street railway companies of their proportion of the cost of abolishing grade crossings and to provide for the filing of claims for damages and to prescribe the mode of judicial inquiry into such claims."

Section 3 of this act reads in part as follows:

"The cost of the construction of the improvement authorized, including the making of ways, crossings or viaducts, above or below the railroad tracks, and also including the raising or lowering of the grades of the railroad tracks and side-tracks for such distance as may be required by such municipality and made necessary by such improvement, together with the cost of any land or property purchased or appropriated, and damages to owners of abutting property, or other property, shall be borne one-half by any such municipality and one-half by any such railroad company or companies."

Such was the law at the time the ordinances, 141 and 1074, were adopted.

At the time of the passage of the ordinances, Hopple street was a street forty feet in width. The city, in making this improvement, deemed it advisable to widen the street from forty to sixty feet. The title to Ordinance No. 141 reads:

"Providing for the separation of grade at the intersection of Hopple street and the tracks of the Baltimore & Ohio Southwestern Railroad within the corporate limits of the city of Cincinnati, Ohio."

The ordinance then contains five paragraphs setting forth the reasons for adopting the ordinance and recites that the city and the railroad company have co-operated in the preparation of plans and specifications and in detailed cost estimates for the separation of grades at said Hopple street crossing, and that said plans have been approved. Said ordinance further recites:

"Owing to the increased travel over said Hopple street to Western avenue, it would be greatly to the advantage of said city of Cincinnati, while performing the work of separating the grades at said crossing, to increase the width of Hopple street within the limits of the improvement covered herein, and the said city intends, contemporaneously with the proceedings to separate said grades, to commence proceedings to widen Hopple street within the limits of said improvement from forty (40) to sixty (60) feet."

The ordinance then provides:

"Sec. 1.   That said Hopple street, at its intersection with the tracks of the railroad company, shall be elevated to such height

that the lowest point of the structure at said intersection shall be twenty-six (26) feet above the top of the rails of the railroad tracks in their present location, and shall be at least twenty-one (21) feet from the top of the rails as the same shall be altered after the completion of the separation of grades at said point under the terms of this ordinance.

"Sec. 4. The estimated cost of said improvement, exclusive of the cost of property required for the extension of Meeker street, from Hopple street to Spring Grove avenue, and exclusive of damages to the owners of abutting property, or other property affected thereby, is two hundred and thirty-nine thousand six hundred and ninety-two dollars and ninety-seven cents ($239,-692.97). The proportion of said cost to be borne by said railroad company is one hundred and nineteen thousand eight hundred and forty-six dollars and forty-eight cents ($119,846.48), being one-half the entire cost of said work, exclusive of land required and damages to land.

"Sec. 5. The estimated cost of the widening of the overhead roadway is one hundred and nineteen thousand eight hundred and forty-six dollars and forty-nine cents ($119,846.49), making the entire cost of said structure as widened to sixty (60) feet, three hundred and fifty-nine thousand five hundred and thirty-nine dollars tand forty-five cents ($359,539.45).

"Sec. 7. The city of Cincinnati shall furnish or procure by dedication, purchase or condemnation, all land required for the widening of said Hopple street from forty (40) to sixty (60) feet within the limits of said improvement at its cost and expense. Said work is not in any manner made necessary by reason of the separation of grades at said Hopple street crossing, but said street is widened solely at the instance of the city of Cincinnati, and for its benefit, and said railroad company is not required to pay any portion of the cost of the same.

"Sec. 8. Nothing in this ordinance contained shall be construed as limiting the liability of the railroad company from paying its proportion of land damages which would have accrued had the structure been forty (40) feet wide.

"Sec. 10. The city agrees to take the necessary steps after the completion of the improvement to vacate that portion of Hopple street embraced within the boundary line of the right-of-way of the railroad company at the point where said street is now intersected by the tracks of said railroad."

Section 11 provides that in the event the city fails, neglects or refuses to vacate that portion of Hopple street within the limits of the right-of-way of said railroad company at the point where said Hopple street is now intersected by the tracks of      ·

said railroad company, that the railroad company shall have the right to recover from the city the entire cost paid under this ordinance.

Ordinance No. 1074 merely amended Section 1 of Ordinance 141, and it is not important for the determination of the question in this case.

The railroad company filed its acceptances to both ordinances within the time required by the terms thereof.

The plaintiff company claims that this ordinance is invalid (1) because it embraces more than one subject clearly expressed in the title thereof; (2) it is a conditional agreement which council has no power to make; and (3) that it improperly apportions the cost between the city and the railroad.

Courts in determining the validity of ordinances will be bound by the same canons of construction as apply in passing upon the constitutionality of statutes. Unless, therefore, an ordinance is clearly invalid and beyond the power of council, it should be upheld and every doubt as to the validity of the ordinance should be resolved in its favor.

Does this ordinance, then, embrace more than one subject clearly expressed in its title?

The title, as hereinbefore set out, provides for the separation of grades at the intersection of Hopple street and the tracks of the Baltimore & Ohio Southwestern Railroad within the corporate limits of the city. True, in carrying out the objects of this ordinance, the city states that certain other things will be done, but these are to be accomplished by separate ordinances and are not carried out in this specific ordinance.

Plaintiff in its petition claims that the ordinance embraces not only the separation of grades, but the proposed widening of Hopple street, the proposed vacation of a portion of Hopple street, and the proposed raising of the railroad tracks five feet above Hopple street.

It is sufficient to state that the proposed widening of Hopple street is merely incidentally stated, as well as the proposed vacation of a portion of Hopple street. The city merely provides that it will hereafter take the necessary steps to do these things, and as a maatter of fact the proceeding now sought to be en-

joined by this plaintiff is a proceeding by which property is sought to be condemned for the very purpose of widening Hopple street.

In *Heffner* v. *City of Toledo,* 75 Ohio State, 413, the Supreme Court said:

"The statutory requirement that 'No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title,' was intended to prevent the uniting in one ordinance of diverse subjects or measures and effecting its passage by uniting in its support all those in favor of any, and to prevent the adoption of ordinances by the votes of councilmen ignorant of their contents."

And:

"Whether an ordinance is violative of the statutory requirement * * * is to be determined not by its form, but in the light of the mischief the statute was intended to prevent."

Tested by this rule, this ordinance certainly is not invalid because it embraces more than one subject clearly expressed in the title thereof. The purpose is the abolishment of the grade crossing at Hopple street and this is expressed in its title. The other matters complained of, though contained in the ordinance, are merely part of the general scheme of carrying out the contemplated improvement and were not put in the ordinance to get the vote of other councilmen who might favor one or the other mentioned and therefore vote for the ordinance as a whole. Besides, the other matters complained of could not be carried out without the introduction of separate and distinct ordinances, some of which have already been adopted.

The contention of the plaintiff that the agreement is a conditional agreement, as provided for in Section 11 of the ordinance, is not well taken. If this agreement is invalid, then it is no part of the ordinance and is mere surplusage and may be disregarded, and after the improvement should be made and the city did not carry out its contract, the railroad company, if it sought to recover back the money that it paid for the improvement because the city failed to keep its part of the agreement, could well be charged with notice that the city had no right to

make such agreement and therefore it was in equal fault with the city in entering into such agreement, and where money is paid under a mistake of law, it can not be recovered back.

Therefore, there is no harm in this conditional agreement, even if it be held invalid.

The plaintiff further contends that the ordinance is invalid because it improperly apportions the cost between the city and the railroad.

If the ordinance did this, the plaintiff would probably be entitled to the relief prayed for. But, in my opinion, this ordinance, giving it a fair and reasonable construction and taking into consideration all its recitals and all the surrounding circumstances of the case and the contemplated improvement, can not be held to have this effect. Hopple street is a forty foot street; the railroad crossing at grade is forty feet wide. The city is seeking not only to abolish this forty foot grade crossing, but is, at the same time, as expressed in one of the preambles of the ordinance, seeking to widen Hopple street:

"Owing to the increased travel over said Hopple street to Western avenue, it would be greatly to the advantage of said city of Cincinnati, while performing the work of separating the grades at said crossing, to increase the width of Hopple street, within the limits of the improvements covered herein, and the said city intends, contemporaneously with the proceedings, to separate said grades, to commence proceedings to widen Hopple street within the limits of said improvement from forty (40) to sixty (60) feet."

And in Section 7 of the ordinance it is expressly stated:

"Said work (i. e., the widening of Hopple street from 40 to 60 feet) is not in any manner made necessary by reason of the separation of grades at said Hopple street crossing, but said street is widened solely at the instance of the city of Cincinnati, and for its benefit, and said railroad company is not required to pay any portion of the cost of the same."

Under Section 3 of the act for the abolition of the grade crossing (98 Ohio Laws, 191), upon which the ordinance is based, it is provided:

"The cost of the construction of the improvement authorized, including the making of ways, crossings or viaducts, above or below the railroad tracks, and also including the raising or lowering of the grades of the railroad tracks and side tracks for such distance as may be required by such municipality and made necessary by such improvement * * * shall be borne one-half by any such municipality and one-half by any such railroad company or companies."

In my opinion, this means that the railroad company, under the law as it then existed, was required to pay only one-half of the cost of the improvement necessary for the abolition of the grade crossing as it existed, and inasmuch as the facts of this case show that this grade crossing was forty feet wide, and inasmuch as it further appears from the evidence and from the ordinance itself that the widening of Hopple street from forty to sixty feet is done solely for the benefit of the city and that such widening is not in any manner made necessary by reason of the separation of grades at Hopple street as it now exists, to-wit, forty feet, the railroad company can not be called upon to pay for the benefit which the city itself is to receive in the making of this improvement, and, therefore, by the very terms of the ordinance, if the railroad company be charged one-half of the actual improvement necessary for the abolition of the crossing as it now exists, forty feet in width, said ordinance does not improperly apportion the cost between the city and the railroad.

If this is not the construction to be placed upon ordinances of this character, what is there to prevent the city, if council should see fit, to widen Hopple street, or any other street which a railroad crosses at grade, say one hundred feet and then compel the railroad company to pay its proportional share of the entire expense in widening the street?

I am of the opinion that such an action would be confiscatory and beyond the powers of council and I believe that council had this in mind when it expressly provided in this ordinance that inasmuch as the widening of Hopple street for the benefit of the city from forty to sixty feet was not necessary to the improvement, that therefore the railroad company should only be

charged for the improvement actually necessary to eliminate .the grade crossing as it now exists.

It should also be borne in mind that the plaintiff in this case, the Cincinnati Union Stock Yard Company, will in no manner suffer because of this improvement. It will have its day in court and its damages, both for the widening of Hopple street and those incurred because of the building of the viaduct as widened, will be assessed and paid to it.

Therefore, being of the opinion that the judgment of the court of common pleas in the case of *City of Cincinnati, by its Solicitor,* v. *Victor T. Price and the Baltimore & Ohio Southwestern Railroad,* No. 150293, is *res adjudicata,* as far as the plaintiff's right in bringing this suit as a tax-payer is concerned, and assuming for the purposes of this case that the plaintiff had the right to bring this proceeding as an abutting property owner, and that the ordinance sought to be attached is not invalid for the reasons set forth by the plaintiff in its petition, the relief prayed for must be denied and the petition dismissed.

In denying the injunction in this case, I desire to quote with approval the forceful language used by Judge Day, of the United States Court at Cleveland, in refusing an injunction in the case of *Quinby* v. *Cleveland,* 16 Ohio Fed. Dec., 583 (9 O. L. R., 313), where an injunction was sought against the city of Cleveland from proceeding to build a viaduct over one of the railroads in that city:

"The work contemplated is one of great importance to the municipality and its citizens. It is planned to protect and save life. No substantial rights of the plaintiff are taken from him without due process of law, but, on the contrary, he has a full, complete and adequate remedy for every damage resulting to him, be it direct or consequential. No private right of his would be conserved by the granting of the injunction and the same will therefore be refused."